Richard F. **SCHIFFMANN** et al.,
Petitioners,

v.

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD,**
Respondent.

No. 6567.

District of Columbia Court of Appeals.

Argued Dec. 11, 1972.

Decided March 20, 1973.

Richard F. Schiffmann, pro se, with whom John H. Treanor, Jr., Washington, D.C., was on the brief, for petitioners.

Leo N. Gorman, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

Before KERN, GALLAGHER and PAIR, Associate Judges.

PER CURIAM:

Challenged by this petition for review is an order of the Alcoholic Beverage Control Board (the Board) granting the application of Weisfield Market, Inc. (the applicant) to transfer its retailer's license class "B" [1] from 131 E Street, S. E. to 501 Fourth Street, S. E. in the "Capitol Hill" section of the District of Columbia.

Petitioners, homeowners in the immediate area of the applicant's place of business,[2] question (1) the sufficiency of the evidence to support the Board's action, and (2) whether the requirements of D.C. Code 1967, § 25–115(a)6 (Supp. V, 1972), and D.C.Code 1967, § 25–115(b), were satisfied. The specific complaint is that the Board provided the petitioners with ambig-

1. A retailer's license class "B" authorizes the retail sale of beer and light wine for consumption off the premises. *See* D.C. Code 1967, § 25–111(f).

2. Petitioner Richard Schiffmann is an attorney, admitted to practice in the State of Massachusetts, presently employed by a department of the federal government.

uous "Instructions For Protest Petitions" which led them to rely on an inapplicable statutory provision, with the result that they restricted their solicitation of protestants to property owners within a 600-foot radius of the premises involved in the protest.[3] We affirm.

The record discloses that the premises for which the license was sought were formerly occupied by a Mrs. Goldberg who, for many years prior to this dispute, operated a neighborhood grocery store on such premises at which, pursuant to a retailer's class "B" license, alcoholic beverages were sold apparently without incident.

Believing that they would be aggrieved should applicant be permitted to transfer its beverage license,[4] petitioners obtained from the Board "Instructions For Protest Petitions" and forms upon which were to be recorded the names and addresses of those who opposed.[5] Included in the "Instructions For Protest Petitions" were summaries of Section 14(a)6 and (c) of the Alcoholic Beverage Control Act (the Act),[6] which govern the disposition of applications for licenses in particular cases.

At the hearing on May 17, 1972 there was testimony by petitioners Richard Schiffmann, Jane Schiffmann and Lincoln Langlis in opposition to the application. In addition, petitioner Richard Schiffmann

presented to the Board protest petition forms containing the signatures of 60 owners of property within a radius of 600 feet of the boundary lines of applicant's property, expressing opposition under Section 14(c) of the Act, D.C.Code 1967, § 25–115(c), to the granting of the application. The applicant presented to the Board protest petition forms signed by some 24 residents in the area who supported the granting of the application. Then followed testimony that the applicant had for 23 years conducted a neighborhood grocery store in the same general area where, pursuant to a class "B" license, beer was sold.

Upon consideration of the evidence in support of and in opposition to the application and in conformity with D.C.Code 1967, § 1–1509(e) (Supp. V, 1972), the Board made findings of fact from which it was concluded that the applicant met the requirements of the Act, D.C.Code 1967, § 25–115(a)6 (Supp. V, 1972),[7] and that Section 14(c) of the Act, D.C.Code 1967, § 25–115(c), relied upon by petitioners, was not controlling. The Board then authorized the transfer of the license. Thereafter, petitioners requested—but were denied —reconsideration and this petition for review followed.

▆▆▆▆ While the instructional materials furnished petitioners were not models of

---

3. Insofar as here pertinent, the instructions read:

   These petitions may be submitted under two sections of the law; Section 14(a) 6, which relates to the wishes of persons residing or owning property in the neighborhood, or Section 14(c), which relates solely to signature[s] of owners of property within a 600′ radius of the premises. . . .

   At oral argument it was represented that the form of instructions has since been revised.

4. D.C.Code 1967, § 25–117, provides for such transfers. 3 D.C.R.R. 2.3 sets out transfer procedures. D.C.Code 1967, § 25–115(b) requires that a notice of the application be posted in a conspicuous place on the premises and that the Board shall also give notice by advertisement published at least once a week for at least two weeks in a newspaper of general circulation.

5. Such persons (denominated remonstrants or protestants) were then privileged to appear and testify at the hearing conducted by the Board as to the reasons for their opposition.

6. These sections are codified as D.C.Code 1967, § 25–115(a)6 (Supp. V, 1972), and D.C.Code 1967, § 25–115(c). They are available also as Appendix A to 3 D.C.R.R. 14(a)6 and 14(c).

7. By this section of the Act it is provided that:

   (a) . . . Before a license is issued the Board shall satisfy itself:

   .      .      .      .      .

   6. That the place for which the license is to be issued is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired.

clarity, we are not persuaded that the responsibility for petitioners' misinformation, if any, should be attributed solely to the Board. Included in the instructions was a summary of the applicable provisions of the Act, indicating quite clearly that protest petitions might be submitted under two sections of the Act: one, D.C.Code 1967, § 25–115(a)6 (Supp. V, 1972), relating to the wishes of persons residing or owning property in the neighborhood; and, the other, D.C.Code 1967, § 25–115(c), relating solely to owners of property within a 600-foot radius. Certainly, petitioner Richard Schiffmann, an attorney, must be presumed to have been familiar with the provisions of the Act which he admitted he had read.[8] In any event, the Board did not summarily disregard their protest petitions. *Compare* Pollack v. Simonson, 121 U.S.App.D.C. 362, 350 F.2d 740 (1965), and MacArthur Liquors, Inc. v. Palisades Citizens Ass'n, Inc., 105 U.S.App.D.C. 180, 265 F.2d 372 (1959).

■ Petitioners would have us substitute our judgment for that of the Board, but this we are not free to do. We may not disturb any action of the Board in the exercise of its statutory powers, unless plainly wrong or without support in substantial evidence in the whole of the administrative record. *See* D.C.Code 1967, § 1–1510(3)(E) (Supp. V, 1972).

■ Petitioners urge that the requirements of D.C.Code 1967, § 25–115(a)6 (Supp. V, 1972), and § 25–115(b) were not satisfied because there is no indication in the Board's decision that the notice required by the Act, D.C.Code 1967, § 25–115(b), was ever published. We find it difficult to understand how petitioners can seriously contend that they had no notice of the hearing[9] since they were present and were accorded a fair opportunity to present, by evidence and argument, their views respecting the application.[10] We have, therefore, indulged the presumption of regularity in the administrative proceedings. Braniff Airways, Inc. v. C.A.B., 126 U.S.App.D.C. 399, 379 F.2d 453 (1967); United States v. Rucker, 435 F.2d 950 (8th Cir. 1971). *Cf.* WAIT Radio v. F.C.C., 135 U.S.App.D.C. 317, 320, 418 F.2d 1153, 1156 (1969).

■ The contention that the Board failed to make the finding required by D.C.Code 1967, § 25–115(a)6 (Supp. V, 1972), is clearly without merit. The Board made a specific finding that the premises involved were appropriate for the transfer of the license and such finding is presumptively valid. James Bakalis & Nickie Bakalis, Inc. v. Simonson, 140 U.S.App.D.C. 241, 434 F.2d 515 (1970). Based upon our review of the record, there was substantial evidence to support the determination of appropriateness. This court, deciding a similar question in Clark's Liquors, Inc. v. Alcoholic Beverage Con. Bd., D.C.App., 274 A.2d 414, 418 (1971), pointed out that:

> [O]n judicial review, it is not the province of the court to substitute its judgment for that of the administrative agency, provided "the grounds upon which the agency acted [were] clearly disclosed and adequately sustained." [Footnote omitted; quoting in part from Securities and Exchange Com. v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943).]

Affirmed.

---

8. Jenkins v. Black and White Cab Co., 15 F.R.D. 5 (D.D.C.1953); Doing v. District of Columbia, D.C.Mun.App., 67 A.2d 396 (1949); Momsen-Dunnegan-Ryan Co. v. Helvering, 63 App.D.C. 9, 68 F.2d 754 (1933).

9. *See* Kuhn v. C.A.B., 87 U.S.App.D.C. 130, 183 F.2d 839 (1950); Clark's Liquors, Inc v. Alcoholic Beverage Con. Bd., D.C.App., 274 A.2d 414 (1971). *Cf.* Richards v. Davison, 45 App.D.C. 395 (1916). *See also* 1 K. Davis, Administrative Law Treatise, § 8.04 (1958).

10. The better practice would have been for the Board to include in the record copies of the notice of publication prescribed by D.C.Code 1967, § 25–115(b), and we direct that such shall be the practice in the future.